UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DREW M. LINDER,

    Plaintiff,

v.                                                        Case No. 1:17-cv-1049
                                                         Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for supplemental security income (SSI).

**I.    Discussion**

The present case involves plaintiff's application for SSI filed on December 16, 2016. PageID.361. Plaintiff had previously filed a claim for SSI in 2011, which was denied by Administrative Law Judge (ALJ) Prothro on April 4, 2014. PageID.43, 108-119. In the present case, plaintiff alleged a disability onset date of April 5, 2014. PageID.361. Plaintiff identified his disabling conditions as bipolar disorder, poor memory, anxiety, paranoid schizophrenia, attention deficit disorder (ADD), "hits himself in the face," depression, and suicide attempts. PageID.354. Prior to applying for SSI, plaintiff completed the 10th grade and worked as a fry cook, machine operator, packager and stocker. PageID.355. ALJ Ohanesian reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on August 24, 2017. PageID.43-56. This decision,

which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

3

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since his SSI application date of December 16, 2016. PageID.45. At the second step, the ALJ found that plaintiff had severe impairments of: attention deficit disorder (ADD); mood disorder, NOS; anxiety disorder, NOS; schizoaffective disorder; and polysubstance abuse disorder. PageID.46. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.46.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple, routine, repetitive tasks; and to 1 to 3 step tasks; he can have occasional contact with the public; and he can do no fast paced work.

PageID.48.

In reaching this determination, ALJ Ohanesian noted that "[t]he prior finding concerning the claimant's residual functional capacity or other finding required under the applicable sequential evaluation process for determining disability is binding absent evidence of an improvement or change in condition since the prior hearing (Acquiescence Ruling 98-4(6))." PageID.48. Since plaintiff filed this action, the Sixth Circuit issued its opinion in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), which examined the principles of *res judicata* as those principles pertain to a claimant's subsequent application for benefits. The

court in *Early* defined those principles as "[f]inality, efficiency, and the consistent treatment of like cases." *Earley*, 893 F.3d at 933.

> An administrative law judge honors those principles by considering what an earlier judge found with respect to a later application and by considering that earlier record. That is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, *albeit not binding*, consideration in reviewing a second application.

*Id.* (internal citations omitted) (emphasis added). While the court pointed out that an ALJ is not bound by a decision involving a previous claim, it recognized that "[f]resh review is not blind review" and that "[a] later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934. Here, ALJ Ohanesian followed the framework set forth in *Earley*. While ALJ Ohanesian agreed with the RFC reached by ALJ Prothro in 2014, he reviewed the medical record as far back as 1996 and conducted an independent review of the evidence to reach that conclusion.

ALJ Ohanesian also found at the fourth step that plaintiff had no past relevant work. PageID.54. At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at all exertional levels. PageID.55-56. Specifically, ALJ Ohanesian found that plaintiff could perform the requirements of the following work in the national economy: machine feeder (270,000 jobs); cleaner (280,000 jobs); and packager (172,000 jobs). PageID.55-56. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 16, 2016 (the date the application was filed) through August 24, 2017 (the date of the decision). PageID.56.

### III. DISCUSSION

Plaintiff set forth two issues (with sub-issues) on appeal:

> **A. The ALJ failed to comply with 20 C.F.R. § 404.1527 [sic] by not considering plaintiff's treating psychologist a "medical source," and by failing to give adequate weight to his opinion.**
>
> **1. The ALJ should have found that Jon Weeldreyer, MA, LLC limited license psychologist is an acceptable medical source;**
>
> **2. Had addressed and given proper weight to Mr. Weeldreyer's opinion, he would have found plaintiff disabled under Listing 12.04;**
>
> **3. When the ALJ chose to not give Mr. Weeldreyer's opinion controlling weight, he committed reversible error by not addressing the criteria in 20 C.F.R. 404.1527(d) [sic].** [1]

The crux of plaintiff's claim is that the ALJ should have considered Mr. Weeldreyer to be an acceptable medical source whose opinion should be given controlling weight. The Court disagrees. Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 416.927(c)(2). The regulations define an "acceptable medical source" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. § 416.913(a). An "acceptable medical source" receives special deference. *See id*. ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)"). A treating source who is not an "acceptable medical source" is deemed an "other source." *See* 20 C.F.R. § 416.913(d) ("In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it

---

[1] This alleged error is addressed in § III.B., *infra*.

affects your ability to work. Other sources include, but are not limited to -- (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists)[.]").

In the present case, Mr. Weeldreyer was a "limited licensed psychologist," not a "licensed psychologist." *See* 20 C.F.R. § 416.913(a). In Michigan, an individual with a master's degree in psychology may obtain a "limited" psychology license. M.C.L. § 333.18223(b)(2) (authorizing such licenses). Normally, a limited licensed psychologist must be supervised. *Id*. In *Richardson v. Commissioner of Social Security*, No. 1:12-cv-776, 2013 WL 5211245 (W.D. Mich. Sept. 16, 2013), *affirmed* 570 Fed. Appx. 537 (6th Cir. 2014), this Court determined that a limited licensed psychologist is not an acceptable medical source under the regulations:

> Plaintiff contends that the ALJ gave little or no weight to a treating source, whom plaintiff refers to as "Dr. Maureen Fabiano, the treating psychologist," "Dr. Fabiano," "M.A. Fabiano," and "Dr[.] Maureen Fabiano." Plaintiff's Brief at pp. 3, 11–13. The record reflects that Ms. Fabiano is not a doctor, but rather holds a master's degree and is a limited licensed psychologist "MA/LLP" (AR 532).

> \* \* \*

> The ALJ could properly discount Ms. Fabiano's opinions because she is not an acceptable medical source under 20 C.F.R. § 416.913(a) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, licensed optometrists (for establishing visual disorders only), licensed podiatrists (for establishing impairments of the foot, or foot and ankle only), and qualified speech-language pathologists (for establishing speech or language impairments only). While Ms. Fabiano's opinions can be considered as evidence from an "other" medical source, they are not entitled the weight given to the opinion of an "acceptable medical source" such as a doctor. *See* 20 C.F.R. § 416.913(d) (1) (evidence from "other" medical sources includes information from nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists). *See also*, *Gayheart*, 710 F.3d at 378 (psychological therapist is not an acceptable medical source under the regulations); *Shontos v. Barnhart*, 328 F.3d 418, 425–26 (8th Cir.2003) (nurse practitioner is not an acceptable medical source under § 404.1513(a), but can be considered as an "other" medical source under 20 C.F.R. § 404.1513(d)(1)); *Nierzwick v. Commissioner of Social Security*, 7 Fed. Appx. 358, 363 (6th Cir.2001) (physical therapist's report not afforded significant weight because the therapist is not recognized as an acceptable medical source).

7

> Pursuant to Social Security Ruling (SSR) 06–3p, opinions from other medical sources, such as nurse practitioners, physicians' assistants and therapists "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *See* SSR 06–3p. The ALJ evaluated and then properly discounted Ms. Fabiano's opinions consistent with SSR 06–3p. Accordingly, plaintiff's claim of error should be denied.

*Richardson*, 2013 WL 5211245 at *7-8 (footnote omitted).

In affirming this decision, the Sixth Circuit rejected plaintiff's claim that the ALJ improperly evaluated the opinion of limited licensed psychologist Fabiano:

> Richardson next argues that the ALJ erred by discounting the medical opinions of examining psychologist Dr. J. Keith Ostien and case worker Maureen Fabiano, who both concluded that Richardson had significant work-related limitations in mental functioning. The ALJ reasonably gave little weight to the medical opinion of Ms. Fabiano because she is not a physician and her conclusion that Richardson had significant impairments conflicted with other substantial evidence in the record, including Richardson's 2008 mental health assessment, Fabiano's own treatment notes, and Dr. Pinaire's opinion. Likewise, the ALJ reasonably discounted Dr. Ostien's opinion because it was given after a single evaluation and his conclusions were based largely on Richardson's vague statements concerning his circumstances and condition.

*Richardson v. Commissioner of Social Security*, 570 Fed. Appx. 537, 538-39 (6th Cir. 2014) (emphasis added).

Finally, in *Smith-Johnson v. Commissioner of Social Security*, 579 Fed. Appx, 426 (6th Cir. 2014), a case in which the plaintiff took the opposite position as asserted in here (*i.e.*, that an LLP who issued an unfavorable opinion was *not* an acceptable medical source), the court explained that in evaluating an opinion prepared by a limited licensed psychologist, the "acceptable medical source" is not the limited licensed psychologist, but rather the supervising licensed psychologist who co-signed the opinion:

> On April 29, 2008, Smith–Johnson submitted to a psychological evaluation by Mary P. Koopman, a licensed professional counselor and limited licensed

8

psychologist, which was cosigned by P. Douglas Callan, Ph.D., a licensed psychologist.

* * *

Although Smith-Johnson takes issue with the consideration of Koopman's report because she is not an "acceptable medical source," she makes no attempt to explain why a report that is co-signed by an acceptable medical source (a licensed psychologist) cannot be considered. Even assuming, however, that the report does not come from an acceptable medical source, the regulations plainly permit consideration of that report. Specifically, the objective findings in the report are properly considered because they are relied upon by Dr. Kriauciunas, a non-examining state agency consultant whose opinion should be given weight only "insofar as [it is] supported by evidence in the case record." SSR 96–6p; *see also* 20 C.F.R. § 404.1527(c)(3)-(4). Koopman's opinions also are properly considered under the regulations that require evaluation of every medical opinion "[r]egardless of its source," and that permit "other sources" to be used to determine severity. 20 C.F.R. §§ 404.1513(d), 404.1527(c).

*Smith-Johnson*, 579 Fed. Appx. at 427, 435.

For these reasons, the ALJ properly declined to characterize Mr. Weeldreyer, a limited licensed psychologist, as an acceptable medical source. Accordingly, plaintiff's claims of error are denied.

> **B. The ALJ's residual functional capacity (RCF) finding is not supported by substantial evidence under 20 C.F.R. § 404.1520a [sic] and SSR 98-6p.**
>
> **1. The ALJ did not properly consider psychologist Jon Weeldreyer's treatment or opinion in determining Plaintiff's RFC;**
>
> **a. Even if Mr. Weeldreyer was not a medical source, his opinion was entitled to great if not controlling weight;**
>
> **b. In the absence of giving Mr. Weeldreyer's opinion controlling weight, the ALJ committed reversible error by not addressing 20 C.F.R. 404.1527(d) [sic], in part, because his RFC finding was more restrictive than the psychologist's opinion[.]**

Plaintiff contends that the ALJ failed to give Mr. Weeldreyer's opinion appropriate weight and not including those restrictions in the RFC. RFC is a medical assessment of what an

9

individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 416.945. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

The ALJ performed an extensive evaluation of Mr. Weeldreyer's opinions. Because plaintiff contends that the ALJ had no basis to reject Mr. Weeldreyer's opinions, the Court will reproduce the ALJ's complete evaluation of those opinions:

> The opinions of Jon Weeldreyer, MA, LLP, CAADC, CCSM, noted in Exhibit B18F are given little weight. Mr. Weeldreyer completed a mental residual functional capacity form on the claimant's behalf in May of 2017 (Ex. B18F). Concerning his mental abilities and aptitudes needed to do unskilled work, Mr. Weeldreyer opined that the claimant had serious limitations concerning his ability to remember work like procedures; carry out very short and simple instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; and accept instructions and respond appropriately to criticism from supervisors (Ex. B18Fl-2). And he was unable to meet competitive standards concerning his ability to maintain attention for two hour segment; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; get along with coworkers or peers without unduly distracted them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and deal with normal work stress (*Id.*).

> He opined that the claimant's interpersonal skills were so limited by mental health that he could not sustain work in proximity to others (Ex. B18F/2). His mental health symptoms caused thinking errors, including delusions and paranoia that overwhelmed his decision-making (*Id.*). And low stress tolerance brought out thought and mood disorder symptoms (*Id.*). He opined that the claimant had marked restriction in activities of daily living; extreme limitation in social functioning; extreme limitation in concentration, persistence, or pace; and four or more episodes of decompensation (*Id.*). He opined that the claimant would be absent about four days per month (Ex. B 18F/3). And he opined that the claimant was not capable of maintaining stability to hold a job (*Id.*). He noted that the claimant might be able to get hired, but he had not exhibited the ability to sustain emotional control or rational thinking to hold a job (*Id.*). Finally, he concluded by noting that the claimant's

substance abuse exacerbated the severity of his symptoms; but he did not indicate any differences in the claimant's functional abilities if he were totally abstinent (*Id.*). Rather, he noted that he did not feel total abstinence would change how he characterized the claimant's limitations (*Id.*).

Some weight is given to the opinion that the claimant's substance abuse was a factor in eroding his functional abilities. However, Mr. Weeldreyer is not an acceptable medical source. The opinions concerning the claimant's mental abilities and aptitudes needed to do unskilled work were inconsistent with the record as a whole, including the claimant's history of medication noncompliance and positive response to medication therapy when compliant. It was also inconsistent with Mr. Weeldreyer's own treatment notes. Mr. Weeldreyer had the opportunity to document the claimant's functional impairments on a session-by-session basis. However, he consistently left the space blank concerning functional impairments (Ex. B13F/14, 22, 28, 36, 44, 52, 60, 68, 76, 84, 92, 100, 108, B16F/1, 7, 13, 27, 34, B21F/1, 7, 12, 18, 25). Additionally, we have changed how we evaluate mental impairments. The paragraph B criteria used by Mr. Weeldreyer are no longer used. The opinion that the claimant would be absent about four days per month was speculation. Finally, the opinion that the claimant was not capable of maintaining stability to hold a job was an opinion on an issue reserved to the Commissioner, and it involved vocational considerations for which Mr. Weeldreyer is not an expert. Therefore, the opinions of Mr. Weeldreyer noted in Exhibit B 18F are given little weight overall.

The opinions of Mr. Weeldreyer noted in Exhibit B19F are given little weight. He gave his statement on the claimant's behalf in May of 2017 (Ex. B19F). He gave the claimant a guarded prognosis, noting that the claimant had a serious and persistent mental illness, and this was something he would try to manage the rest of his life with appropriate medications, appropriate social supports, and treatment (Ex. B19F/2). He opined that with appropriate treatment, the claimant could probably be functional in the form of not needing additional hospitalizations; but it was unlikely that he would be able to put together those kind of social supports (*Id.*). He imagined that there would be numerous hospitalizations in the claimant's life (*Id.*). And he concluded that the stimuli of the workplace, the conditions of work, the requirements of doing different work tasks, or the functions of the job itself, and interacting with coworkers and supervisors would cause serious limitation in the claimant's ability to function (*Id.*).

As noted above, Mr. Weeldreyer is not an acceptable medical source. The guarded prognosis and the opinions concerning the claimant's limitations were inconsistent with the record as a whole, including the claimant's history of medication non-compliance and positive response to medication therapy when compliant. It was also inconsistent with Mr. Weeldreyer's own treatment notes. Mr. Weeldreyer had the opportunity to document the claimant's functional impairments on a session-by-session basis. However, he consistently left the space blank concerning functional impairments (Ex. B13F/14, 22, 28, 36, 44, 52, 60, 68, 76, 84,

> 92, 100, 108, B16F/1, 7, 13, 27, 34, B21F/1, 7, 12, 18, 25). Finally, the opinion that he claimant would be unable to tolerate employment was an opinion on an issue reserved to the Commissioner, and it involved vocational considerations for which Mr. Weeldreyer is not an expert. Therefore, the opinions of Mr. Weeldreyer noted in Exhibit B19F are given little weight overall.

PageID.53-54.

The regulations provide that the agency will evaluate every medical opinion received "[r]egardless of its source," and that unless a treating source's opinion is given controlling weight, the agency will consider the factors set forth in § 416.927(c)(1)-(6) in deciding the weight given to any medical opinion. *See* 20 C.F.R. § 416.927(c). While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ evaluates the report of a medical source who is not a treating, acceptable medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). "The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record." *Noto v. Commissioner of Social Security*, 632 Fed. Appx. 243, 248-49 (6th Cir. 2015). However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted). Here, the ALJ provided a reasoned evaluation of the opinions prepared by Mr. Weeldreyer. Accordingly, plaintiff's claim of error is denied.

> **2. The ALJ's credibility finding is not supported by substantial evidence in the record because he failed to give adequate reasons for finding plaintiff less than fully credible and his findings are not supported by substantial evidence.**

Plaintiff contends that the ALJ failed to give adequate reasons for finding that some of his alleged symptoms were not credible. The term "credibility" is no longer used by the

Commissioner in evaluating claims. Defendant's Brief (ECF No. 14, PageID.438-439). In SSR 16-3p the agency stated:

> [W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character.

SSR 16-3p, 2016 WL 1119029 at *1-2 (eff. March 16, 2016).[2] Under this policy, "[a]djudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments," and "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *Id*. at *10.

While SSR 16-3p eliminated the use of the term "credibility", the regulatory analysis remains the same. As this Court observed,

> The new policy ruling did not and could not change the underlying regulations. The longstanding two-part analysis for evaluating symptoms applies. 20 C.F.R. § 404.1529(a). "An ALJ must first determine 'whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.' If such an impairment exists, the ALJ 'must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.'" *Morrison v. Commissioner*, 2017 WL 4278378, at *4 (quoting *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007) ). Relevant factors to be considered in evaluating symptoms are listed in 20 C.F.R. § 404.1529(c)(3). "It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Commissioner*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases); *see also Carsten v. Commissioner*, No. 15-14379, 2017 WL 957455, at *4 (E.D. Mich. Feb. 23, 2017).

*Palmer v. Commissioner of Social Security*, No. 1:17-cv-577, 2018 WL 4346819 at *6 (W.D. Mich. Aug. 9, 2018), R&R adopted 2018 WL 4334623.

The evaluation of a claimant's subjective complaints remains peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Services*, 833 F.2d 589, 592 (6th

---

[2] The Court notes that SSR 16-3p was in effect when the ALJ issued plaintiff's decision on August 24, 2017.

Cir. 1987). While the term "credibility" is no longer used, this Court must still give deference to the ALJ's evaluation of the symptoms under the regulations, and may not disturb that ALJ's evaluation "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) "[A]side from this linguistic clarification, the analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p." *Scobey v. Commissioner of Social Security*, No. 1:17-cv-987, 2018 WL 4658816 at *11 (W.D. Mich. Sept. 28, 2018) (internal quotation marks and brackets omitted).

Here, plaintiff alleged that he is disabled by impairments which affect his memory and his ability to hear, concentrate, and get along with others. PageID.48. Plaintiff contends that the ALJ's residual functional capacity (RFC) is not based on substantial evidence because it does not take account of his disabling symptoms. The ALJ reviewed the record and found that plaintiff's symptoms were not entirely consistent with his statements concerning the intensity, persistence, and limiting effects of those symptoms based upon: (1) plaintiff's treatment history (he received generally conservative treatment and with a positive response medication); (2) plaintiff's non-compliance with treatment (he was not taking medications as prescribed, and did not discontinue using cannabis despite its interaction with his prescription medications); (3) plaintiff's post-onset work activities (he was self-employed mowing lawns); (4) plaintiff's inconsistent statements regarding consumption of alcohol (plaintiff testified that he did not consume much alcohol, but also reported drinking about five glasses of alcohol per day); (5) plaintiff's social interaction (plaintiff testified that he had only one friend but acknowledged that he got cannabis from a group of friends); and (6) plaintiff's daily activities (plaintiff stated that his boyfriend did the cooking, but later also testified that he cooked once or twice a week). PageID.50-52.

After reviewing the evidence, the ALJ concluded that the RFC was supported by the objective findings, plaintiff's history of mostly conservative treatment during the period in question, plaintiff's history of treatment non-compliance, plaintiff's positive response to treatment when compliant, portions of the opinions of Dr. Schirado, and the record as a whole. PageID.54. The Court finds no compelling reason to disturb the ALJ's determination with respect to the limiting effects of plaintiff's symptoms on his ability to do basic work activities. Accordingly, this claim is denied.

### 3. The RFC finding did not include all plaintiff's well-documented impairments.

Plaintiff did not include a separate section in his brief addressing this alleged error. To the extent plaintiff contends that the ALJ failed to include impairments identified by Mr. Weeldreyer, that contention is denied for the reasons stated above.

## II. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: March 28, 2019 /s/ Ray Kent
United States Magistrate Judge